# THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

---

**ANTHONY RUSH and**
**ERIKA RUSH, his Wife**

    **Plaintiffs,**

vs.                                              **Case No. _____**
                                                            **Jury Demanded**

**MINNESOTA SOYBEAN PROCESSORS; and**
**WALTER HAFFNER COMPANY, INC.,**

    **Defendants.**

---

## COMPLAINT FOR DAMAGES

---

COME NOW Plaintiffs Anthony Rush and Erika Rush, by and through undersigned counsel, and for cause of action against Defendants Minnesota Soybean Processors and Walter Haffner Company, Inc. and would respectfully state as follows:

## PARTIES

1.  Plaintiff, Anthony Rush, is an adult resident citizen of Memphis, Shelby County, Tennessee.

2.  Plaintiff, Erika Rush, is an adult resident citizen of Memphis, Shelby County, Tennessee and is the lawful wife of Anthony Rush.

3.  Upon information and belief, Defendant Minnesota Soybean Processors (hereinafter MN Soybean) is a Cooperative Association that owns and/or operates a soybean crush facility and bio-diesel facility in Brewster, Minnesota. Upon information and belief, Minnesota Soybean Processors' was incorporated in Minnesota with a principal office is located at 121 Zeh Avenue, Brewster, Minnesota 56119. There is no agent for service of process registered with

1

Minnesota's Secretary of State; however, Jeramie L. Weller is identified as the Chief Executive Officer.

4. Upon information and belief, Defendant Walter Haffner Company, Inc is a corporation that owns and operates a railroad car rental business in Mobile, Alabama. Upon information and belief, Walter Haffner Company's office address is 3510 Montlimar Plaza Drive, Mobile, Alabama 36609. Walter Haffner Company can be served with process via their registered agent Walter C. Haffner at P.O. Box 1553, Mobile, Alabama. Defendant Walter Haffner Company, Inc. is directly liable, as the owner of the property WCHX23423, for its own corporate negligent actions as well as for the acts and omissions of its owners, employees, agents and contractors by virtue of the doctrines of direct negligence, direct reckless, agency, apparent agency, implied agency, employer/employee relations, master-servant relations, loaned servant relations, joint-venture, joint and several liability, respondent superior, vicarious liability, the use of inherently dangerous products, engaging in inherently dangerous practices and contract.

## JURISDICTION & VENUE

5. All or a substantial part of the events that form the basis of this Complaint occurred within this jurisdiction and within one year preceding the filing of this action, and this court has jurisdiction pursuant to 28 U.S.C. Section 1332. The amount in controversy exceeds $75,000.00, exclusive of interest and costs, the sum specified by 28 U.S.C. Section 1332.

## STATEMENT OF FACTS

Plaintiffs reallege and incorporate by reference the paragraphs above as if they were fully restated verbatim herein.

6. On or about January 19, 2021, Plaintiff Anthony Rush was working as an employee of Runyon Industries (hereinafter "Runyon") which is a company that primarily receives soybean

oils that it processes into animal feed ingredients for downstream customers.

7. Mr. Rush had been employed with Runyon since 2014 and was employed in the rail car unloading department at the time of the incident. He is assigned to non-hazardous rail tank cars.

8. Upon information and belief, rail tank cars containing hazardous material should be specifically marked on both sides and both ends of any rail car containing hazardous materials.

9. Upon information and belief, Defendant MN Soybean regularly contracts with Runyon on delivery of their products and services. Plaintiff routinely unloads soybean oil soap stock received from MN Soybean.

10. Defendant Minnesota Soybean Processors manufactures two (2) products: soap stock which is routinely delivered to Runyon and bio-diesel fuel which upon information and belief includes the presence of Methanol and Ethanol, which is not traditionally delivered to Runyon.

11. At all times mentioned herein, Defendant Walter Haffner Company owned, operated and/or controlled rail tank car WCHX23423.

12. On January 19, 2021, at approximately 7:50 a.m., Plaintiff Anthony Rush and co-worker George Monson were instructed to unload rail tank car WCHX23423 located at spot 6 on Center Track 95 which had been received from MN Soybean.

13. Upon arrival to Runyon, the rail car was checked for any hazardous warnings/placards and the paperwork was reviewed to verify the contents which identified that rail car WCHX23423 was shipped from MN Soybean and was supposed to be loaded with only soybean oil soap stock.

14. Plaintiff Anthony Rush and his co-worker, Mr. Monson, were on top of rail tank car WCHX23423 preparing to open the rail car for product sampling which is required by Runyon

before the contents of the rail tank car can be unloaded and sent to the cooker for processing. The seals were cut and Mr. Monson initially tried to loosen the manway bolts but had to request assistance from Plaintiff Rush.

15. As Plaintiff Anthony Rush started loosening the manway bolts to collect the sample, the pressure was being released as expected when suddenly and without warning an explosion and fire occurred at and around the rail car's manway. Both Plaintiff Anthony Rush and Mr. Monson were burned by the flames and attempted to escape the fire and exit the rail car in fear for their lives and additional explosions.

16. Plaintiff Rush made it to one of the ladders but was unable to hold on and fell to the ground. Mr. Monson also fell to the ground. Runyon employees acted immediately and assisted Plaintiff Rush and Mr. Monson to safety. Memphis Fire Department and paramedics were called and responded within minutes.

17. Both employees were transported and hospitalized with severe burns and other serious injuries.

18. Runyon Industries immediately notified TOSHA of the incident and the matter was investigated. There were no citations issued to Runyon Industries as a result of TOSHA's inspection and investigation.

19. In addition, Runyon performed its own investigation into the incident which was provided to TOSHA.

20. Runyon's investigation identified three causes and/or contributing causes of the incident:  1) No hazard warning (placard) on railcar.  2) Failure of the shipper/loader to identify hazardous material inside railcar when loading. 3) Absence of grounding on the railcar.

21. Defendant MN Soybean was the outbound loading point for railcar WCHX23423

and was responsible for placing any proper hazardous warnings/placards on the railcar.

22. The last product contained in the railcar was listed as Soybean Oil Soap stock by Defendant MN Soybean. According to the Safety Data Sheet for Minnesota Soybean Oil Soapstock, it is not a hazardous substance or mixture and has no flammability, ignitability or explosivity hazard.

23. Static grounds were not placed on the railcar because Runyon's loading and unloading procedures do not require grounding of cars that do not contain hazardous materials.

24. Defendant MN Soybean introduced something other than soapstock into the car prior to shipping or failed to properly clean the car prior to filing it with soapstock. As the material could not be positively identified on the scene, Runyon had air monitoring and sampling conducted and sent to an independent lab for analysis.

25. The air assessment results revealed that Methanol was detected at the manway of tank car WCHX23423.

26. Accordingly, Runyon could find no evidence of failure to observe safety procedures and/or work instructions by either of its employees, Plaintiff Rush or Mr. Munson.

27. In addition, Laboratory Analysis were taken of five (5) additional railroad cars received from Defendant MN Soybean as part of the same train as rail car WCHX23423. Each of those cars, like rail car WCHX23423, were supposed to be loaded with non-flammable soap stock. Each of the five (5) rail cars tested positive for the presence of Ethanol and Methanol. Based upon their respective loads, neither Ethanol nor Methanol should have been present or anticipated to be present in those loads.

28. As a direct and proximate result of the actions and omissions of Defendants and/or their agents or employees, Plaintiff Anthony Rush suffered serious and severe physical injuries

including, but not limited to bilateral knee contusions, injury to the right knee joint and second degree burns to his right hand, which are permanent in nature. Plaintiff Anthony Rush has also had multiple surgeries to his right hand and is currently waiting to be scheduled for another surgery. Further, Plaintiff Erika Rush suffered a loss of consortium, services and companionship as a result of the injuries to Plaintiff Anthony Rush.

## COUNT I
## NEGLIGENCE – MN SOYBEAN

Plaintiffs reallege and incorporate by reference the paragraphs above as if they were fully restated verbatim herein.

29. Defendant MN Soybean was negligent as owner, operator, and/or manager of the soybean crush and bio-diesel facility located at 121 Zeh Avenue, Brewster, Minnesota in that it failed to comply under the law with a high duty of care for its customers while engaging in an inherently dangerous activity with hazardous materials.

30. Defendant MN Soybean, through the actions and/or inactions of its employees and/or agents was negligent in allowing inadequate, incompetent, and inexperienced employees to deal with hazardous materials in a manner where persons can be foreseeable hurt or severely injured.

31. Defendant MN Soybean, through the actions and/or inactions of its employees and/or agents, was negligent in its failure to prevent Plaintiff Anthony Rush and other customers from being exposed to the risk of explosion/fire from hazardous material improperly introduced into a railcar that was not properly identified as containing hazardous materials.

32. Upon information and belief, Defendant MN Soybean Processors, through the actions or inactions of its employees and/or agents, were further negligent based on the following actions and/or inactions:

    a.    failing to properly identify hazardous materials inside a railcar;

    b.    failing to ensure that a rail tank car is properly cleaned prior to loading nonhazardous material;

    c.    failing to have an adequate system in place to ensure railcars with hazardous materials have appropriate warnings/placards;

    d.    failing to provide adequate and competent staff to ensure that proper procedures are being followed;

    e.    failing to properly hire employees to complete work in a manner that is free from dangerous conditions and foreseeable risks of harm;

    f.    failing to properly hire, train, and supervise employees;

    g.    failing to adequately train employees to safely load and/or unload railcars;

    h.    negligently allowing flammable substances to be contained within a railcar transporting non-flammable substances;

    i.    failing to warn Plaintiff and others of the presence of flammable material in the rail car they loaded;

    j.    Negligently loading flammable and / or hazardous material in a railcar which was to be loaded with non-flammable material only;

33. Plaintiffs allege Defendant MN Soybean either knew or by the exercise of reasonable care should have known that there is a great risk of danger when handling and/or shipping hazardous material.

34. Plaintiffs allege Defendant MN Soybean either knew or by the exercise of reasonable care should have known that handling and transporting hazardous material is an inherently dangerous activity that involves substantial risk, and that proper precautionary measures must be taken to prevent injuries to customers.

35. Plaintiffs allege Defendant MN Soybean had actual and/or constructive notice of the dangerous condition that caused Plaintiff Anthony Rush to suffer serious and severe second degree burns which are permanent in nature.

36. Further, as numerous cars from MN Soybean that were delivered to Runyon on the date of the explosion contained hazardous materials, it is clear that the processes employed by Defendant MN Soybean to properly clean and/or identify hazardous materials in their cars prior to shipping were reckless and inept and exposed the Plaintiffs, and the public, to grave risk of harm by way of explosion.

37. The injuries and damages enumerated below suffered by Plaintiff Anthony Rush were foreseeable and the direct and proximate result of the negligence of Defendant MN Soybean and its employees and/or agents.

38. As a direct and proximate result of the negligence of the Defendants negligent failure to safely handle and properly identify hazardous material, Plaintiff Anthony Rush endured extreme pain and suffering, emotional distress, trauma, and suffered severe physical injuries.

39. As a direct and proximate result of the negligence of the Defendants, Plaintiff Erika Rush has suffered and continues to suffer, the loss of support, maintenance, society, comfort, attention, services, and love and affection of her husband, Plaintiff Anthony Rush.

## COUNT II
## NEGLIGENT HIRING, SUPERVISION, AND TRAINING – MN SOYBEAN

Plaintiffs reallege and incorporate by reference the paragraphs above as if they were fully restated verbatim herein.

40. Defendant MN Soybean had a duty to properly hire, supervise, and train their staff, employees, and agents such that they would be in a position to keep the customers in a safe condition and not expose them to hazardous and flammable materials without proper warning.

41. Given the inherently dangerous nature of handling hazardous materials, Defendant MN Soybean had a heightened duty to hire, supervise, and train their staff, employees, and agents on proper safety measures to prevent injury to Plaintiff Anthony Rush and other customers.

42. Defendant MN Soybean breached that duty by not properly hiring, supervising, and/or training their staff, employees, and agents with respect the safety issues concerning the transportation of their products and the requirement to adhere to all applicable rules, regulations and policies pertaining to the safe shipment of their product by rail.

43. Defendant MN Soybean's staff, employees, and agents failed to adhere to safety policies and procedures required of them.

44. Defendant MN Soybean's staff, employees, and agents either failed to have rules or neglected to enforce the rules and maintain MN Soybean's equipment in a safe condition.

45. Further, as numerous cars from MN Soybean that were delivered to Runyon on the date of the explosion contained hazardous materials, it clear that the processes employed by Defendant MN Soybean to properly clean and/or identify hazardous materials in their cars were reckless and inept and exposed the Plaintiffs, and the public, to grave risk of harm by way of explosion.

46. The injuries and damages enumerated below that Plaintiffs suffered were foreseeable and the direct and proximate result of Defendant MN Soybean's improper hiring, supervision, and training of its staff, employees, and agents.

47. As a direct and proximate result of the negligence of Defendant MN Soybean's improper hiring, supervision, and training of its staff, employees, and agents, Plaintiff Anthony Rush endured extreme pain and suffering, emotional distress, trauma, and suffered severe physical injuries.

48. As a direct and proximate result of Defendant MN Soybean's improper hiring, supervision, and training of its staff, employees, and agents, Plaintiff Erika Rush has suffered and

continues to suffer, the loss of support, maintenance, society, comfort, attention, services, and love and affection of her husband, Plaintiff Anthony Rush.

## COUNT III
## RESPONDEAT SUPERIOR/VICARIOUS LIABILITY- MN SOYBEAN

Plaintiffs reallege and incorporate by reference the paragraphs above as if they were fully restated verbatim herein.

49. Upon information and belief, Defendant MN Soybean maintained personnel, as employees or agents, who were responsible for and/or involved in maintaining the safety of its products and the delivery of its products to its customers. At all times material hereto, these personnel and employees were acting in the course and scope of their employment.

50. The staff, employees and/or agents of Defendant MN Soybean had a duty to Plaintiff and to other customers to take reasonable measures to ensure their safety.

51. The staff, employees, and/or agents of Defendant MN Soybean breached that duty by failing to properly clean the tank car, allowing flammable and hazardous materials inside the rail car and failing to properly identify by warning or placard that the rail car contained flammable and/or hazardous materials.

52. That the injuries and damages sustained by the Plaintiffs were foreseeable and the direct and proximate result of Defendant MN Soybean's employee's negligence.

53. Defendant MN Soybean is liable for the conduct of its personnel and employees under the doctrines of agency, apparent agency, implied agency, employer/employee relations, master-servant relations, loaned servant relations, joint-venture, joint and several liability, respondent superior, vicarious liability, the use of inherently dangerous products, engaging in inherently dangerous activities and contract.

54. As a direct and proximate result of the negligence of Defendant MN Soybean's

employees and personnel, Plaintiff Anthony Rush sustained damages and endured extreme pain and suffering, emotional distress, trauma, and severe physical injuries.

55. As a direct and proximate result of Defendant MN Soybean's employees and personnel, Plaintiff Erika Rush has suffered and continues to suffer, the loss of support, maintenance, society, comfort, attention, services, and love and affection of her husband, Plaintiff Anthony Rush.

## COUNT IV
## STRICT LIABILITY

Plaintiffs reallege and incorporate by reference the paragraphs above as if they were fully restated verbatim herein.

56. Defendant MN Soybean is the manufacturer and seller of soybean soapstock. According to the Safety Data Sheet for Minnesota Soybean Oil Soapstock, it is not a hazardous substance or mixture and has no flammability, ignitability or explosivity hazard.

57. Upon information and belief, Defendant MN Soybean regularly contracts with Runyon on delivery of their products and services.  Plaintiff routinely unloads soybean oil soap stock received from MN Soybean.

58. Therefore, Defendant MN Soybean was engaged in the business of manufacturing and selling soapstock for delivery to customers such as Runyon and the soapstock ordered by Runyon arrived at its facility without any substantial change to the condition in which it was sold.

59. Plaintiffs aver that the soapstock provided by Defendant MN Soybean was defective and/or unreasonably dangerous to the consumer.

60. Plaintiffs aver that the soapstock provided by Defendant MN Soybean contained contaminants and hazardous materials, namely Methanol and/or Ethanol, which is not a component of soapstock and which made this product both defective and unreasonably dangerous.  Further,

Defendant MN Soybean failed to properly label its product as containing hazardous and flammable materials, in light of the presence of Ethanol and / or Methanol.

61. As a result of the presence of hazardous contaminants in the soapstock, an explosion occurred when the manway was opened by Plaintiff and his co-worker.

62. As a result of manufacturing and/or selling a defective product, Plaintiffs aver that Defendant Runyon is strictly liable to Plaintiffs for their injuries and damages.

63. Further, Plaintiffs aver that Defendant MN Soybean is strictly liable in tort for engaging in an inherently dangerous and/or ultra-hazardous activity when it shipped contaminated soapstock by railcar without properly identifying the material as hazardous to the end consumer.

64. That as a direct and proximate result of the aforesaid, the plaintiff was burned by an explosion and fire from the railcar in question and fell to the ground from the top of the railcar thereby sustaining severe and permanent injuries to his hands and knees. Plaintiff there and then suffered severe pain and emotional distress. Plaintiff has suffered and shall continue to suffer wage losses into the future. Plaintiff incurred and may continue to incur medical bills for his treatment. Plaintiff has been severely impaired in his earning capacity and has been disfigured permanently. Plaintiff's condition is such that he may require attendant care in the future.

## COUNT V
## MALICE, RECKLESSNESS, AND GROSS NEGLIGENCE

Plaintiffs reallege and incorporate by reference the paragraphs above as if they were fully restated verbatim herein.

65. Defendant MN Soybean, along with its employees, agents, and anyone acting on its behalf acted intentionally and/or recklessly by continuing to handle hazardous materials without proper precautionary and safety measures despite the known substantial risk of danger to its customers when dealing with hazardous materials. Upon information and belief, Plaintiffs submit

MN Soybean failed to utilize proper safety measures in an effort to increases its profitability at the expense of safety to its customers.

66. Defendant MN Soybean, along with its employees, agents, and anyone acting on its behalf acted with malice and/or recklessness and/or gross negligence by failing to take adequate measures to ensure that the shipment of its product was either free of hazardous materials or with proper warning identifying the hazardous materials.

67. As numerous cars from MN Soybean that were delivered to Runyon on the date of the explosion contained hazardous materials, it clear that the processes employed by Defendant MN Soybean to properly clean and/or identify hazardous materials in their cars were reckless and inept and exposed the Plaintiffs, and the public, to grave risk of harm by way of explosion.

68. Plaintiffs allege that the actions of Defendant MN Soybean of failing to supervise its employees, agents or sub-contractors, failing to safely handle hazardous material and place the proper warning/placard on railcars before shipping amounts to reckless conduct and/or a deliberate indifference to the safety and welfare of customers when involved in the handling of an inherently dangerous material.

69. Plaintiffs submit that the method of operation employed by MN Soybean placed profits and productivity over safety which led to unqualified, understaffed and dangerous operation dealing with an inherently dangerous material.

70. Plaintiffs' injuries and subsequent damages were a direct and proximate result of the Defendants' malicious and/or reckless and/or grossly negligent actions and/or inactions.

71. As a result of Defendant MN Soybean's malicious and/or reckless and/or grossly negligent conduct to the safety of customers involved in handling an inherently dangerous and hazardous material, Plaintiffs are also entitled to punitive damages in such amount as shall be

necessary and appropriate to punish the Defendant and to defer the Defendant from engaging in such behavior again.

## COUNT V
## NEGLIGENCE OF DEFENDANT WALTER HAFFNER COMPANY

Plaintiffs reallege and incorporate by reference the paragraphs above as if they were fully restated verbatim herein.

72. At all times mentioned herein, Defendant Walter Haffner Company owned, operated and/or controlled rail tank car WCHX23423.

73. Defendant Walter Haffner Company owned and/or manage of railcar rental company for profit.  Defendant Walter Haffner Company knew or should have known that its equipment could be used in interstate transport and transport both non-hazardous and hazardous materials by way of rail.  Further, Defendant Walter Haffner Company knew or should have known that the transportation of hazardous materials on the interstate rails is an inherently dangerous activity and posed a foreseeable risk of serious harm by way of explosion or other incident without proper safety measures being utilized.  As such, Defendant Walter Haffner Company owed a heightened duty to ensure that its railcars used in interstate commerce and used by other persons or entities were operated in compliance with all applicable safety standards and protocols.

74. Defendant Walter Haffner Company failed to properly ensure that the railcars that it leased complied with all applicable standards and protocols pertaining the transportation of both hazardous and non-hazardous materials, including proper cleaning of railcars and the proper placement of warning placards when transporting hazardous materials.

75. Further Defendant Walter Haffner Company failed to properly ensure that the persons or entities who leased or used its railcars properly complied with all applicable standards and protocols pertaining to the transportation of both hazardous and non-hazardous materials,

including proper cleaning of railcars and the proper placement of warning placards when transporting hazardous materials.

76. Plaintiffs' injuries and subsequent damages were a direct and proximate result of the Defendant Walter Haffner Companies s' negligent actions and/or inactions.

## **DAMAGES**

Plaintiffs reallege and incorporate by reference the paragraphs above as if they were fully restated verbatim herein.

77. As a direct and proximate result of the negligent acts and omissions of the Defendants, Plaintiff Anthony Rush sustained serious and permanent physical and emotional injuries. The Plaintiff seeks all damages to which he may be entitled under the law for his injuries was caused to suffer the following injuries and damages:

- a. Great physical pain and suffering of a past, present, and future nature;
- b. Mental and emotional pain and suffering of a past, present, and future nature;
- c. Fright, shock, anxiety, anguish and fear for his life;
- d. Permanent Injury and scarring;
- e. Medical bills and expenses of a past, present, and future nature;
- f. Loss of enjoyment of life of a past, present, and future nature;
- g. Lost wages and/or earning capacity of a past, present, and future nature;
- h. Punitive Damages
- i. Pre-judgment and Post-judgment interest;
- j. Statutory and discretionary costs; and
- k. All such further relief, both general and specific, to which Plaintiff may be entitled under the premises.

78. As a direct and proximate result of the acts and omissions of the Defendants, Plaintiff Erika Rush was injured. The injuries and damages for which Erika Rush seeks compensation from the Defendants, both jointly and severally include, but are not limited to:

   a. loss of love, society, affection and consortium of her husband;

   b. loss of services of her husband;

   c. loss of enjoyment of life;

   d. pre- and post-judgment interest;

   e. statutory and discretionary costs;

   f. punitive damages;

   g. incidental and consequential damages stemming from attending to the injuries of her husband including but not limited to loss of earnings and earning capacity; and

   h. all such relief, both general and specific, to which Plaintiff may be entitled under the premises.

**PRAYER FOR RELIEF**

79. WHEREFORE, PREMISES CONSIDERED, Plaintiff Anthony Rush sues the Defendants, both jointly and severally, for his injuries and damages and prays for a judgment against the Defendants for compensatory damages in an amount to be determined by a jury as fair and reasonable in an amount not to exceed Five Million ($5,000,000.00) Dollars.

80. WHEREFORE, PREMISES CONSIDERED, Plaintiff Erika Rush sues the Defendants, both jointly and severally, for her injuries and damages and prays for a judgment against the Defendants for compensatory damages in an amount to be determined by a jury as fair and reasonable in an amount not to exceed One Million ($1,000,000.00) Dollars.

81. WHEREFORE, PREMISES CONSIDERED, Plaintiffs sue the Defendants, both jointly and severally, for punitive damages in an amount sufficient to both punish the Defendants and deter others from engaging in this behavior in an amount to be determined by a jury as fair

and reasonable in an amount not to exceed Twenty-Five Million ($25,000,000.00) Dollars.

82. Plaintiffs also demand all such further relief, both general and specific, to which they may be entitled under the premises.

83. **A JURY IS RESPECTFULLY DEMANDED TO TRY THE ISSUES ONCE JOINED.**

RESPECTFULLY SUBMITTED,

_s/Howard B. Manis_____
Howard B. Manis (BPR No. 16202)
THE COCHRAN FIRM MEMPHIS
One Commerce Square, Suite 1700
Memphis, Tennessee 38103
Telephone: (901) 523-1222
Facsimile (901) 523-1999
hmanis@cochranfirmmidsouth.com


_s/Andrew C. Clarke_____
Andrew C. Clarke (BPR No. 15409)
THE COCHRAN FIRM MEMPHIS
One Commerce Square, Suite 1700
Memphis TN  38103
Telephone: (901) 523-1222
aclarke@cochranfirmmidsouth.com

*Attorneys for Plaintiffs*